James C. PLEDGER, Dir. Dept. of Finance and Administration, State of Arkansas, and Jimmy Lou Fisher, Treasurer of the State of Arkansas *v.* FEATHERLITE PRECAST CORP., on Behalf of Itself and all Other Similarly Situated Taxpayers

91-91                                    823 S.W.2d 852

Supreme Court of Arkansas
Opinion delivered January 27, 1992
[Rehearing denied March 9, 1992.\*]

---

\*Brown, J., not participating.

*Malcolm P. Bobo*, Revenue Legal Counsel; and *Winston Bryant*, Att'y Gen., by: *Mary Stallcup*, Asst. Att'y Gen., for appellants.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellee.

ROBERT H. DUDLEY, Justice. Appellee Featherlite, a corporate taxpayer, and members of the class of taxpayers it attempts to represent, are producers of precast concrete components used in the construction of concrete structures such as bridges and parking decks. The components produced by taxpayer Featherlite are made at its out-of-state plant according to the specifications of its customer. The components are then transported to the jobsite in Arkansas and assembled into a structure.

From May 1, 1981, through December 31, 1986, the period of the use tax audit, the taxpayer was at times a producer-vendor of the component parts, and at other times also subcontracted to assemble the structure. Depending upon its capacity, the taxpayer reported Arkansas use tax on either its vendor use tax permit or its consumer use tax permit. Regardless of which permit it used to report the tax, it calculated the tax due based upon the cost of raw materials used in making the components instead of the sales price of the components. In addition, it neither collected nor remitted tax on the delivery charges included on the bills to its customers for the concrete components.

After the tax audit was completed, the Revenue Division of the Department of Finance and Administration made a proposed use tax assessment and, in doing so, calculated the use tax based upon the sales price of the concrete components, giving credit for

the use tax already reported on the cost of the raw materials. The proposed assessment also included use tax on the delivery charges billed to the customers on the taxpayer's invoices. The taxpayer protested the proposed assessment and requested an administrative hearing. There the taxpayer contended that requiring producers of precast components to pay tax based upon the sales price of the components, rather than the cost of the raw materials used, placed precasters at a competitive disadvantage, since a general contractor that built the same type of structure would do so by pouring the concrete in place, without using precast components, but would be required to pay tax only on the cost of the raw materials used. The Administrative Law Judge held that precast concrete components are items of tangible personal property, and the correct basis for the tax is the sales price of the component, not the cost of the raw materials used in producing it, and sustained the assessment. The taxpayer paid the assessment under protest and filed its appeal in the Chancery Court of Pulaski County, asserting that the revenue division's interpretation of the use tax statutes constituted an illegal exaction. It sought a refund of the $195,844.41 which it had paid under protest; sought an accounting of all taxpayers who might have been similarly taxed; sought refunds for all similarly situated taxpayers who, after the date of filing of this suit, might have been, or would be, taxed in the same manner as this taxpayer; sought to have declared illegal the Revenue Division's interpretation of the use tax statutes and to enjoin the Revenue Division from so interpreting these statutes; and sought an attorney fee from the resulting common fund.

The Director and Treasurer answered and the parties entered into a stipulation of facts. The Chancellor certified the case as an illegal exaction class action. The parties submitted briefs on cross-motions for summary judgment. On December 20, 1990, the Chancellor wrote a two sentence letter to the parties stating that he found the taxpayer's argument more convincing. On December 31, 1990, the Chancellor's last day in office, he signed a detailed thirty-six page order which found for the taxpayer on every count. The attorneys for the Director and the Treasurer were apparently not given the opportunity to approve or disapprove the form of the precedent. We reverse on both the merits and on the procedure.

The appellant Director and Treasurer first argue that the Chancellor erred in holding that he had jurisdiction of this case under Article 16, Section 13, the illegal exaction provision, of the Constitution of the State of Arkansas.

The illegal exaction provision and the cases interpreting it encompass two (2) different types or kinds of exactions. One type involves the prevention of a misapplication of public funds or the recovery of funds wrongly paid to a public official. *See, e.g., Brewer* v. *Hawkins*, 242 Ark. 460, 408 S.W.2d 492 (1966). We have given this type of exaction an expansive interpretation because taxpayers are the equitable owners of all funds collected by a government and, in most of the cases, are liable to replenish the funds exhausted by a misapplication or wrongful payment. Under these conditions taxpayers are entitled to broad relief. *See, e.g., Samples* v. *Grady*, 207 Ark. 724, 182 S.W.2d 875 (1944). For convenience, we label this type of case a "public funds" exaction case.

The case now before us involves a wholly different type of exaction. It does not involve the "public fund" doctrine, and therefore, the same reasoning is not applicable to it. This exaction case involves a taxpayer who seeks to enjoin a government from taxing him. In this second kind of exaction case, which, for convenience, we label an "illegal tax" exaction case, the exaction itself must be alleged to be illegal before the chancery court has jurisdiction under the constitutional provision. It is true that we have many cases in which the collection of taxes has been enjoined under the illegal exaction provision, but all involve a tax that was itself illegal. See for example *Greedup* v. *Franklin County*, 30 Ark. 101 (1875), an attempt to collect a county levy in excess of the five mills allowed by the constitution; *Lyman* v. *Howe*, 64 Ark. 436, 42 S.W. 830 (1897), a tax based upon an assessment not made by the assessor; *Ragan* v. *Venhaus*, 289 Ark. 266, 711 S.W.2d 467 (1986) and *Merwin* v. *Fussell*, 93 Ark. 336, 124 S.W. 1021 (1910), attempts to collect taxes not properly voted by the people; *McDaniel* v. *Texarkana Cooperage & Mfg. Co.*, 94 Ark. 235, 126 S.W. 727 (1910), a tax levied by a county having no jurisdiction over the property; *City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982) and *Waters Pierce Oil Co.* v. *Little Rock*, 39 Ark. 412 (1882), taxes which were not authorized by the city's delegated power of taxation. However,

we have always held that if the taxes complained of are not themselves illegal, a suit for illegal exaction will not lie. *Schuman v. Ouachita County*, 218 Ark. 46, 234 S.W.2d 42 (1950). In *Taber v. Pledger*, 302 Ark. 484, 489, 791 S.W.2d 361, 364 (1990), we wrote that "a suit to declare a tax statute unconstitutional, and therefore void" comes within the illegal exaction provision, while a suit "to determine whether the taxpayer's transactions fall within an exemption created by statute" does not come within the section. More important, and precisely on point in this case, we have held that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal. *Schuman v. Ouachita, supra* (citing *Missouri Pacific Ry. Co.* v. *Fish*, 181 Ark. 863, 28 S.W.2d 333 (1930) and *Beard v. Wilcockson*, 184 Ark. 349, 42 S.W.2d 557 (1931)). Here, the taxpayer does not contend that the use tax is itself illegal, but rather contends that the assessment of its individual tax, and that of others similarly situated, is carried out in an unconstitutional and illegal manner. Consequently, this suit does not come within the illegal exaction provision of the Constitution of Arkansas, and the Chancellor erred in certifying it as a class action coming within that provision.

Since the taxpayer has not pleaded a case that comes within the illegal exaction provision, it is relegated to statutory relief. Ark. Code Ann. § 26-18-406 (1987) provides that relief for a taxpayer is precluded unless the taxpayer has paid the tax under protest, or else posted bond, within thirty (30) days of the issuance of the notice and demand for payment of the assessment. No members of the alleged class, other than appellee Featherlite, timely tendered taxes under protest and, consequently, the attempt to bring all of the other precaster taxpayers into this suit is fatally defective.

The Chancellor additionally ruled that the Revenue Division's policy in interpreting the gross receipts (sales) tax and compensating (use) tax laws was contrary to the intent of the General Assembly. The Director and the Treasurer correctly assign this ruling as error. The Revenue Division assessed the taxes on the "sale" of "tangible personal property." Such an interpretation conforms with the plain meaning of the applicable statutes.

The applicable statutes are as follows:

Ark. Code Ann. § 26-52-301 (1987), in pertinent part, provides:

> There is levied an excise tax of three percent (3%) upon the gross proceeds or gross receipts derived from all sales to any person of the following:
>
> (1) *Tangible personal property*; . . . [Emphasis added.]

Ark. Code Ann. § 26-52-103 (1987), in pertinent part, provides:

> (a)   The following words and phrases, except where the context clearly indicates a different meaning when used in this act, shall have the following meanings:
>
> . . .
>
> (3)(A)   "Sale" is declared to mean the *transfer* of either the title or possession . . . for a valuable consideration *of tangible personal property*, regardless of the manner, method, instrumentality, or device by which the transfer is accomplished. [Emphasis added.]
>
> . . .
>
> (4)   "Gross receipts" or "gross proceeds" means the total amount of consideration for the sale of tangible personal property . . . without any deduction on account of the cost of the properties sold, labor service performed, interest paid, losses, or any expenses whatsoever.
>
> . . .
>
> (7)   "Seller" means every person making a sale in an established business as defined in this section;
>
> . . .
>
> (9)   "Consumer" or "user" means the person to whom the taxable sale is made or to whom taxable services are furnished. All contractors are deemed to be consumers or users of all tangible personal property including materials, supplies, and equipment used or consumed by them in

performing any contract, and the sales of all such property to contractors are taxable sale within the meaning of this act.

Ark. Code Ann. § 26-52-307(1987) provides:

Sales of service and tangible personal property including materials, supplies, and equipment made to contractors who use them in the performance of any contracts are declared to be sales to consumers or users and not sales for resale.

Ark. Code Ann. § 26-53-106(a) (1987) provides:

There is levied and there shall be collected from every person in this state a tax or excise for the privilege of storing, *using*, or consuming within this state any article of tangible personal property purchased for storage, use, or consumption in this state at the rate of three (3%) percent of the sales price of the property. [Emphasis added.]

Ark. Code Ann. § 26-53-102 (1987) in part provides:

As used in this subchapter, unless the context otherwise requires:

(1) "Sales price" means the consideration paid, or given . . . to the vendor for the article of the tangible personal property . . . without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost, . . . or any other expenses whatsoever . . . .

. . .

(4) "Vendor" means and includes every person engaged in making sales of tangible personal property. . . .

. . .

(11) *"Tangible personal property" means personal property which may be seen, weighed, measured, felt, touched, or is in any other manner perceptible to the senses.* [Emphasis added.]

Ark. Code Ann. § 26-53-201 (1987) provides:

As used in this subchapter, unless the contexts other-

wise requires, "contractors" are consumers of all tangible personal property used or consumed in the performance of a contract in this state and of all tangible personal property stored for use or upon which the contractor may exercise any right or power in this state.

Ark. Code Ann. § 26-53-203(a)(1) (1987) provides:

All tangible personal property which is procured from without this state for use, storage, or consumption including machinery, equipment, repair or replacement parts, materials, and supplies used, stored, or consumed by a contractor in the performance of a contract in this state shall be subject to the compensating tax of three percent (3%) of the purchase price as provided by the Arkansas Compensating Tax Act, § 26-53-101 et seq. . . . .

The Revenue Division's interpretation is in conformity with the plain meaning of the foregoing statutes. The Revenue Division calculated the sales and use tax due on the sale of precast concrete components based upon the "sale price" charged the general contractor. The precast concrete components are large specially designed and constructed pieces of concrete and are "tangible personal property." The pieces can be seen and touched; they are tangible. They are not real property at the time they are transported to the jobsite; rather they are still personal property. Thus, the Revenue Division has interpreted the statutes just as they read, giving the words their ordinary and usually accepted meaning.

■ Appellee Featherlite admits that the Revenue Division's interpretation is literally correct, but urges us to hold that the General Assembly intends for the Division to use a more "flexible" interpretation. The taxpayer then supplies us with five possible more "flexible" interpretations, but we need not consider other "flexible" interpretations because the statutes are not ambiguous and the Revenue Division's interpretation of them is in accordance with their plain and accepted meaning.

Appellee Featherlite contends that the Revenue Division's interpretation is unfair because it gives a general contractor, or the specialty subcontractors who pour "in place," an unfair advantage over precasters. There are two short answers to the

argument. First, there is a real distinction between the off-site precasting process and the on-site pouring of concrete into forms. The on-site pouring method of construction is much slower than the precast method, since on-site contractors or specialty subcontactors must wait for the cement to cure in each form before going to the next forms; for example, to build the next floor. Using the on-site method, a contractor might take months to complete the entire structure, but with the use of the precast method it might take only weeks. Also, precasting allows the concrete to be prestressed making it stronger than concrete poured on site. The precast process results in a superior product which the general contractor often chooses to purchase. The product that is sold to the general contractor is "tangible personal property." On the other hand, the general contractor's product is a building or a bridge that is so affixed to the land that it becomes real estate. Second, even if there were no distinction other than the "sale" of "tangible personal property" to the general contractor, it does not mean that the Revenue Division is incorrectly interpreting the applicable statutes. The applicable statutes themselves make the distinction.

The Chancellor also found that the Revenue Division's interpretation of the sales and use tax statutes violates the Commerce Clause of the Constitution of the United States. This finding is also assigned as error, and once again, we hold the assignment is meritorious. "[E]qual treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." *Halliburton Oil Well Co.* v. *Reily*, 373 U.S. 64, 70 (1963). The sales and use taxes at issue are not imposed in a way that creates an inequity between in-state and out-of-state taxpayers. The residence of the precast company has no bearing upon the amount of taxes it pays. The Revenue Division imposes both the sales and use taxes upon the price of the concrete components regardless of whether they are precast within or without the state. Thus, there is equal treatment for similarly situated in-state and out-of-state taxpayers in the imposition of the taxes and, as a result, there is no violation of the commerce clause. It was error for the Chancellor to hold otherwise.

In order to sustain the ruling of the Chancellor, appellee Featherlite contends that the taxes are imposed in a way that

creates an inequity between subcontractors and general contractors. As previously set out, there are material differences between subcontractors that sell tangible personal property and general contractors that purchase that personal property. However, appellee Featherlite argues that when it serves as the subcontractor in assembling a structure, it is treated differently than a general contractor because Featherlite must remit tax on the sales price of tangible personal property, while the general contractor must pay tax only on the cost of the raw materials which go into the structure. The argument ignores the fact that when appellee Featherlite has produced tangible components and shipped them to the site, and then acts as a subcontractor in assembling a structure, it is assembling pieces of "tangible personal property." Quite differently, the general contractor that does not purchase precast products would be pouring concrete into forms on site and therefore would be using only raw materials in its construction work.

The general contractors bid against each other to construct a finished structure ready for occupancy. The amount of a general contractor's bid is determined by the anticipated cost of the job. In order to anticipate the cost, the general contractor must weigh the cost of precast components against the cost of pouring concrete in place. It is only after this decision is made that the precaster enters the building process. If a general contractor has decided to use precast components it will seek bids from precasters. The precasters will then bid against each other to supply the precast concrete components to the winning general contractor. Even when the precaster subcontracts to assemble the components, the general contractor must finish the structure. Thus, the precasters are not in competition with the general contractors and the taxes are not imposed in such a manner as to give the general contractors an unfair advantage over the precasters.

■ Appellee Featherlite acts in two distinct capacities. In one capacity it is a producer-vendor, and in the other, it is a producer-subcontractor. The case of *Republic Steel Corp.* v. *McCastlain, Comm'r*, 240 Ark. 979, 403 S.W.2d 90 (1966) sets out the basis for taxation in each capacity. In that case, Republic was an out-of-state manufacturer of steel reinforcing bars used in the construction of military missile launching concrete silos. Republic contracted with an Arkansas general contractor to

provide and install steel bars. Republic reported the use tax due based upon the cost of the raw materials used to make the steel bars, rather than the sales price of the bars, and the Revenue Division made a deficiency assessment based upon the difference between the raw material costs and the sales price, just as it did in the case at bar. Republic contested the tax. On appeal, we held that Republic acted in two separate capacities; one, as a manufacturer making the steel bars and, two, as a subcontractor installing them, and that as a manufacturer, it transferred title to the steel bars to itself in its capacity of a subcontractor. *Id.* at 981, 403 S.W.2d at 92. Based upon this rationale, we held that a sale to the subcontractor had occurred and that the sales price of completed steel bars, rather than the cost of the materials used to make them, was the correct basis to use in calculating the tax due. Appellee Featherlite is being taxed in exactly the same manner in this case.

The Chancellor additionally found that the Revenue Division's application of the sales and use taxes violated the Equal Protection Clauses of the Constitutions of the United States and the State of Arkansas. Again, we hold that the Chancellor erred.

In *Larey, Comm'r* v. *Continental Southern Lines, Inc.*, 243 Ark. 278, 283, 419 S.W.2d 610, 614-15 (1967), we wrote:

> To afford equal protection of the laws, required by Amendment Fourteen to the United States Constitution, such classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated shall be treated alike. Equality for the purposes of competition and the flow of commerce is measured in dollars and cents and not in legal abstractions. [Citations omitted.]

"In deciding whether an equal protection challenge is warranted, there must first be a determination that there is a state action which differentiates among individuals." *Bosworth* v. *Pledger*, 305 Ark. 598, 604, 810 S.W.2d 918, 920 (1991). Once equal protection is invoked, the rational basis test must be applied to determine whether there exists any rational basis for the classification. *Bosworth* v. *Pledger, supra.* The rational basis test is generally applied to the review of tax legislation. *Streight* v.

*Ragland, Comm'r*, 280 Ark. 206, 212, 655 S.W.2d 459, 462 (1983). The task of the court is "to consider if *any* rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose." *Id.* at 215, 655 S.W.2d at 464.

As previously set out, there is a rational basis for the Revenue Division to tax general contractor consumers differently than vendors and subcontractors. The concrete components sold by appellee Featherlite come within the statutory definition of "tangible personal property" which is "personal property which may be seen, weighed, measured, felt, touched, or is in any other manner perceptible to the senses." Ark. Code Ann. § 26-53-102(11) (1987). Thus, the Revenue Division's interpretation that the concrete components are subject to taxation is valid.

On the other hand, the Revenue Division treats contractors as purchasers or consumers and requires them to pay tax on the sales price of items they purchase. The applicable statute provides:

> All contractors are deemed to be consumers or users of all tangible personal property including materials, supplies, and equipment used or consumed by them in performing any contract, and the sales of all such property to contractors are taxable sales within the meaning of this act. . . .

Ark. Code Ann. § 26-52-103(9) (1987).

If a general contractor purchases a precast concrete component, the tax due is based upon the price of that component. However, if a general contractor purchases the raw materials and produces the component from those raw materials, it is taxed only on the price paid for the raw materials.

Thus, the Revenue Division's classification is based upon a distinction between vendors and consumers. Vendors such as appellee Featherlite are required to remit taxes based upon the sales price of the finished product at the time of the sale, while consumers, such as general contractors, are required to pay the tax based upon the price of the item purchased at the time of purchase. The distinction is not arbitrary and does not impermissibly distinguish between equal citizens.

The Chancellor also held that delivery charges that were included in appellee Featherlite's bill to the general contractor were not subject to sales or use tax. That ruling is also in error.

■ As previously set out, appellee Featherlite produces and sells the precast concrete components, sometimes as a producer-vendor and sometimes as a subcontractor. Appellee billed the general contractor for the components, the erection charges, and the delivery charges. The Revenue Division assessed a tax deficiency based on all of the above charges, including the delivery charges. Appellee argued below, and the Chancellor held, that since appellee contracted with an independent carrier to deliver the components, and then separately set out the delivery charges, it should not be obligated to collect the tax on the charges. That ruling is in direct conflict with our holding in *Belvedere Sand & Gravel Co.* v. *Heath*, 259 Ark. 767, 536 S.W.2d 312 (1976). The Revenue Division is not attempting to collect a tax on hauling services as such, but is collecting a tax on the total consideration received by the vendor for the sale of tangible personal property, and that included delivery.

Reversed and remanded for entry of a decree consistent with this opinion.

BROWN, J., not participating.