The Honorable Randy Bryant State Representative 14138 DeGraff Road Rogers, Arkansas 72756
Dear Representative Bryant:
This opinion is being issued in response to your recent question regarding the issue of the use of public funds for a private purpose.
You have stated the following facts as a basis for your question: The Eureka Springs City Advertising and Promotion Commission (CAPC) collects certain taxes from the various businesses in Eureka Springs. These tax revenues help fund an advertising program which is aimed at soliciting requests by the public for information about Eureka Springs. The public makes its requests for information by calling an 800 number, by returning a response card, or by calling a Eureka Springs Chamber of Commerce number, all of which are published in the tax-funded advertisements. The responses that are received through all three sources are turned over to the Eureka Springs Chamber of Commerce, who, pursuant to a contract with the CAPC (which involves a fee paid out of tax revenues to the Chamber of Commerce), mails out three publications produced by the Chamber of Commerce. These publications are the only information that is mailed out in response to the requests for information. Advertisement in the three Chamber of Commerce publications is limited to members of the Chamber of Commerce, or to those who are willing to pay a fee of $175 (which is the price of a membership in the Chamber of Commerce), in addition to the cost of the ad. The mailing lists generated by the responses to the tax-funded advertising program become the exclusive property of the Chamber of Commerce, which can sell the lists to non-members.
You have presented the following question:
 Does the above-described scenario constitute an illegal use of public funds for a private purpose?
At the outset, allow me to note that I have previously opined on what appears to be the same fact situation about which you have inquired. See
Op. Att'y Gen. No. 91-211, a copy of which is enclosed. In the event that the situations may differ, I offer the following response to your question. As you will note, I have reached the same conclusion that was reached in Op. No. 91-211.
It is my opinion that the answer to your question will turn upon a determination of all of the attendant facts, as presented and established by all of the interested parties. A factual determination of this nature can only be conducted by a court. For this reason, I am unable to give a conclusive answer to your question; however, I can review the applicable law on the subject, which may be of assistance to you in assessing the situation.
The Arkansas Supreme Court has addressed the issue of the unlawful use of public funds for a private purpose on various occasions. The contexts in which it has done so do not appear to be factually on-point with the situation that you have described. Nevertheless, a review of the court's comments on the subject in those contexts is enlightening.
The right of action for an unlawful use of public funds for a private purpose arises out of Article 16, § 13 of the Arkansas Constitution, which states:
 Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.
Ark. Const., art. 16, § 13.
In Pledger v. Featherlite Precast Corp., 308 Ark. 124, 823 S.W.2d 852,cert. denied, ___ U.S. ___, 113 S.Ct. 82, 121 L. Ed.2d 46 (1992), the Arkansas Supreme Court recognized that an "illegal exaction" can take two forms: (1) A misapplication of public funds; and (2) A wrongful taxation. Id. at 128.
Eureka Springs' situation would appear to involve a claim of the first of these two types of "exactions." The Featherlite court labeled this type of illegal exaction a "public funds" exaction, and noted that the court has traditionally given this type of illegal exaction an expansive interpretation, "because taxpayers are the equitable owners of all funds collected by a government and, in most of the cases, are liable to replenish the funds exhausted by a misapplication or wrongful payment."Featherlite, 308 Ark. at 128. "Under these conditions," the court stated, "taxpayers are entitled to broad relief. See, e.g., Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875 (1944)." Id.
One of the leading cases in which the Arkansas Supreme Court has addressed the issue of the unlawful use of public funds for a private purpose is Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447
(1963). In that case, a taxpayer challenged the use of tax funds for the purpose of paying retirement benefits to employees of the Arkansas Education Association, which was a private organization. The court concluded that even though these employees worked primarily in jobs that benefited the public, the use of tax funds to pay their retirement benefits did not benefit the public, but rather, benefited the employees privately, and was therefore unlawful. In so holding, the court gave a concise statement of the law applicable to the issue of the use of public funds for a private purpose:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624:" The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
Chandler, 236 Ark. at 258.
The court took a similar view of the use of public funds that was at issue in Texarkana-Forest Park Dist. No. 1 v. State, 189 Ark. 617,74 S.W. 784 (1934). There, the legislature passed a road improvement tax, and authorized that a certain amount be deducted from that collected tax, for the purpose of paying the maturing bonds of previously organized road improvement districts. It was argued that one such road improvement district was not entitled to this deducted amount for maturing bonds, because the district had been organized under an unconstitutional act and therefore did not constitute a public entity. The court agreed and held that the unconstitutionally-organized road improvement district was, in essence, a private entity, and that to allow it to use tax funds for the payment of maturing bonds would constitute an unlawful use of public funds for a private purpose. The court said:
 [T]he evidence presented upon trial of this cause warranted the chancellor in finding that appellant district was not, when organized, a public enterprise but, on the contrary, a private and personal venture of those effecting the organization thereof. The power to pay gratuities to individuals is denied to the Legislature generally by constitutional mandate, and usually a gift of money to an individual would be an appropriation of public funds to private uses, which cannot be justified in law. Mead v. Action, 139 Mass. 341; Citizen Sav. 
Loan Ass'n v. Topeka, 20 Wall. (U.S.) 655; Parkersburg v. Brown, 106 U.S. 487, 1 S.C. 442; Cole v. La Grange, 113 U.S. 1, 5 S.Ct. 416; Cooley, Constitutional Limitations (6th ed.) 601, 602.
 For the reason last stated, we cannot and should not presume that the Legislature would have passed act 63 of 1931 donating public funds to private uses, or to road districts organized under unconstitutional law.
Texarkana-Forest Park, 189 Ark. at 623.
See also Clark v. State, 308 Ark. 84, 824, S.W.2d 345 (1992) (Brill, J., concurring); Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492 (1966);Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875 (1944).
A primary consideration in these "public funds" cases appears to be whether those who contributed tax money received the intended benefit therefrom, or whether, by contrast, the benefit was received by a private individual or entity. Again, a determination of this question will turn upon a consideration of all of the relevant facts, which, as noted previously, can only be done by a court.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh