Oscar Stilley Attorney at Law Central Mall Plaza, Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted six similar measures, four of which I rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. 2000-057, 2000-018, 1999-411 and 99-259. My office has revised and certified the ballot title and popular name for one of your proposals as evidenced by Op. Att'y Gen. 2000-108. Another submission, Op. Att'y Gen. 2000-090, was withdrawn prior to review. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT TO ABOLISH THE STATE AND LOCAL SALES AND USE TAX ON USED GOODS, TO PROHIBIT THE INCREASE OF TAXES WITHOUT VOTER APPROVAL AT A REGULARLY SCHEDULED STATEWIDE ELECTION, ALSO KNOWN AS A "GENERAL ELECTION," TO PROVIDE FOR A THREE YEAR STATUTE OF LIMITATIONS FOR ACTIONS TO RECOVER TAXES, BY THE TAXING AUTHORITY OR BY AN AGGRIEVED TAXPAYER, TO PROVIDE PROCEDURAL SAFEGUARDS FOR TAXPAYERS, AND FOR OTHER PURPOSES
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION ABOLISHING THE STATE AND LOCAL SALES AND USE TAX ON USED GOODS; AUTHORIZING THE COLLECTION OF SALES AND USE TAX ON GOODS USED TO MAKE REMANUFACTURED GOODS, BUT NOT ON THE SALE PRICE OR MARKET VALUE OF THE REMANUFACTURED GOODS; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED TO PREVENT THE IMPOSITION OF SALES AND USE TAX UPON OTHERWISE TAXABLE GOODS, OR THE SALE OR USE OF SAME, WHICH HAVE NOT BEEN PREVIOUSLY SUBJECT TO ANY SALES OR USE TAX BY ANY GOVERNMENT ENTITY; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED TO PROHIBIT THE COLLECTION OF TAXES FOR WHICH LIABILITY ACCRUED PRIOR TO THE EFFECTIVE DATE OF THIS AMENDMENT; PROVIDING THAT IN THE EVENT THAT A TAX ON USED GOODS HAS BEEN PLEDGED AS SECURITY FOR THE PAYMENT OF BONDED INDEBTEDNESS, AND THE LOSS OF SAID REVENUE WOULD VIOLATE LAW SUPERIOR TO THIS CONSTITUTION, THE TAXES SO PLEDGED SHALL CONTINUE UNTIL THE BONDED INDEBTEDNESS IS FULLY PAID; PROHIBITING THE IMPOSITION OR INCREASE OF ANY TAX, OR THE DIVERSION OF ANY FUEL TAXES OR OTHER REVENUE SOURCES PRESENTLY USED FOR ROAD OR BRIDGE CONSTRUCTION OR MAINTENANCE TO OTHER PURPOSES, WITHOUT THE APPROVAL OF A MAJORITY OF THE QUALIFIED ELECTORS, OF THE STATE OR THE AFFECTED LOCAL GOVERNMENTAL ENTITY, FREELY VOTING AT THEIR ABSOLUTE UNFETTERED DISCRETION UPON THE ISSUE AT A REGULARLY SCHEDULED STATEWIDE ELECTION; DEFINING "REGULARLY SCHEDULED STATEWIDE ELECTION" TO MEAN THE GENERAL ELECTIONS AT WHICH STATE AND FEDERAL CONSTITUTIONAL OFFICERS ARE ELECTED, WHICH ACCORDING TO PRESENT LAW ARE HELD EVERY OTHER NOVEMBER; PROVIDING THAT THE REDUCTION OR ELIMINATION OF EXEMPTIONS OR CREDITS, OR THE CHANGING OF ANY LAW OR RULE WHICH RESULTS IN THE COLLECTION OF ADDITIONAL TAX REVENUE FROM SOME OR ALL TAXPAYERS, SHALL BE DEEMED A TAX INCREASE TO THE EXTENT THAT SAID LAW RESULTS IN INCREASED TAX OR EXACTION; PROVIDING THAT THE TERM "MAJORITY OF THE QUALIFIED ELECTORS," AS USED IN THIS AMENDMENT, MEANS A MAJORITY OF THE QUALIFIED ELECTORS WHO ACTUALLY APPEAR AND VOTE UPON THE PERTINENT QUESTION; ABOLISHING THE RULE AGAINST RECOVERY BACK OF VOLUNTARY PAYMENTS, AS APPLIED TO ILLEGAL EXACTIONS; PROVIDING FOR A THREE (3) YEAR STATUTE OF LIMITATIONS FOR THE CITIZENS' RECOVERY BACK OF ILLEGAL EXACTIONS, AND FOR A THREE (3) YEAR STATUTE OF LIMITATIONS ON ALL CIVIL, CRIMINAL, OR OTHER ACTIONS BY ANY STATE OR LOCAL GOVERNMENT TO COLLECT DELINQUENT TAXES; PROVIDING THAT IN ANY ILLEGAL EXACTION LAWSUIT, ALL PERSONS SIMILARLY SITUATED TO THE NAMED PLAINTIFF SHALL BE ENTITLED TO RECOVER BACK ANY SUMS FOUND TO HAVE BEEN ILLEGALLY EXACTED, LESS COSTS AND REASONABLE ATTORNEY'S FEES, UPON SUCH CONDITIONS AS THE COURT MAY FIND JUST; EXPANDING THE DEFINITION OF ILLEGAL EXACTION TO INCLUDE NOT ONLY ILLEGAL EXPENDITURES OR THE ILLEGAL IMPOSITION, LEVYING, ASSESSMENT, OR COLLECTION OF TAX OR ENFORCED GOVERNMENTAL OR QUASI GOVERNMENTAL EXACTIONS, BUT ALSO ERRONEOUS OR EXCESSIVE IMPOSITION, LEVYING, ASSESSMENT, OR COLLECTION OF TAX OR ENFORCED GOVERNMENTAL OR QUASI GOVERNMENTAL EXACTIONS OF ANY KIND WHATSOEVER, PROVIDED, HOWEVER, THAT SUCH SHALL NOT INCLUDE ANY LEGAL TAX IF THE TAXING AUTHORITY REASONABLY ATTEMPTED TO COMPLY WITH ALL LAWS, REGULATIONS, AND REQUIREMENTS FOR THE ASSESSMENT OR COLLECTION OF TAX, AND THE CIRCUMSTANCES ARE SUCH THAT THE TAXPAYERS IN FAIRNESS AND EQUITY OUGHT NOT TO ESCAPE LIABILITY FOR THE TAX; PROVIDING THAT SOVEREIGN IMMUNITY, FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, FAILURE TO APPROPRIATE MONEY FOR REPAYMENT, OR PAYMENT OVER TO ANOTHER ENTITY, CONSTITUTE NO DEFENSES TO AN ACTION FOR ILLEGAL EXACTION; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT IMMEDIATELY, EXCEPT AS OTHERWISE PROVIDED; IMMEDIATELY UPON THE AMENDMENT'S APPROVAL, ALL REVENUES COLLECTED FROM SALES AND USE TAX ON USED GOODS WILL CEASE, AND THE GOVERNMENT ENTITIES WHO DEPEND ON THOSE REVENUES WILL NOT BE ABLE TO MAKE UP FOR THE LOSSES UNTIL THE NEXT "REGULARLY SCHEDULED STATEWIDE ELECTION"; PROVIDING THAT ALL PROTECTIONS FOR THE TAXPAYER, RELATED TO LITIGATION, SHALL APPLY TO ALL ACTIONS BROUGHT TO JUDGMENT AFTER THE DATE OF PASSAGE OF THIS AMENDMENT, EXCEPT AS TO ACTIONS IN WHICH A NEW TRIAL WOULD BE REQUIRED IN ORDER TO DETERMINE FACTS ESSENTIAL TO THE JUDGMENT, OR ACTIONS IN WHICH THE JUDGMENT WAS ALREADY FINAL ON THE DATE OF THE PASSAGE OF THIS AMENDMENT; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
Section 1.
 • The terms "used goods" and "remanufactured goods," as used in this section, are not defined. These terms are vague and cannot be summarized without clarification.
 • This section of your proposed measure provides that if a tax on used goods "has been pledged as security for the payment of bonded indebtedness, and the loss of said revenue would violate law superior to this constitution," the tax will continue until such debt has been paid. Because of your reference to "law superior to this constitution," it is unclear whether the intent is to assure only compliance with federal law. In particular, it is unclear whether this provision is intended to change the current state constitutional prohibition against impairment of contracts. Moreover, whether or not the intent is to preserve the applicability of both the federal and the state constitutions' prohibitions of impairment of contracts (see
U.S. Const., Art. 1, § 10 and Ark. Const, Art. 2, § 17), it is unclear whether the intent is to protect against all types of impairment of contract, or only contracts arising out of bond issues. I note, in connection with this issue, that in Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000), the Arkansas Supreme Court rejected a popular name and ballot title, finding that they were misleading because they failed to alert voters to the fact that the revenues generated by taxes abolished by the proposed measure would not be immediately replaced. The court held that this type of omission was problematic in that voters were not alerted to the fact that they could lose governmental services that were paid for by the lost revenue. I note that neither your proposed measure nor your proposed ballot title seems to take this issue into consideration.
 • Although your proposed measure purports to be "self-executing," it is unclear how certain matters will be determined. In this section, for example, it is unclear how determinations of bonded indebtedness will be made. In addition, it is unclear what is meant by the provision that taxes pledged to bonded indebtedness are to "continue." This issue should either be fleshed out more specifically, with specific indications of precisely which taxes will continue to be imposed and collected, or the authority to make this determination should be granted to the General Assembly.
 • It is unclear what the impact of this section is upon currently applicable exemptions. For example, this section specifically authorizes sales and use taxes on parts or materials used in the remanufacturing process, yet such items are currently exempt from sales and use tax under the provisions of A.C.A. § 26-52-401(12).
Section 2.
 • This section of your proposed measure prohibits the diversion of revenues "presently used for road or bridge construction or maintenance" to other purposes. Because of this specific reference only to revenues used for road and bridge construction and maintenance, it is unclear whether the intent is to change current law, which prohibits the diversion of any tax revenues from the purposes for which they were levied. See Ark. Const., Art. 16, § 11.
 • This section requires, for the imposition or increase of any tax, the approval of a majority of the electorate, voting "at a regularly scheduled statewide election." It is unclear how this requirement would operate in a context involving only a local tax.
 • The term "impose" is vague. More specifically, it is unclear whether the term refers to the initial passage of a tax law or ordinance, or also to the continued levy and collection of taxes. For this reason, it is unclear whether, under your proposed measure, it will continue to be lawful to levy and collect taxes that were not approved in accordance with the requirements of your proposed measure.
Section 3.
• This section eliminates the operation of the "voluntariness" doctrine in cases of illegal exaction. Because of the specific reference to illegal exactions, it is unclear whether the intent is to maintain the applicability of the voluntariness doctrine in situations not precisely constituting an illegal exaction, but in which a taxpayer may for other reasons seek recovery of taxes paid.
• This section provides that persons who are similarly situated to successful plaintiffs in illegal exaction cases may recover "upon such conditions as the court may find just." It is unclear precisely how this provision is to be implemented. In particular, it is unclear whether similarly situated persons will be required to intervene in such illegal exaction cases, whether they must file separately with the court, or whether this provision simply confers universal jurisdiction upon courts who hear such cases, over all potential recoverers.
Section 4.
• This section describes, but does not define, "illegal exactions." Because of the specific reference in this description to levying, assessment, and collection, it is unclear whether the intent is to change current law defining illegal exactions under Article 16, § 13 of the Arkansas Constitution as having either a component of collection or a component of misuse. See, e.g., Pledger v. Featherlite Precast Corp.,308 Ark. 124, 823 S.W.2d 852, cert. denied, 506 U.S. 826, 113 S.Ct. 82,121 L.Ed.2d 46 (1992).
• The description of "illegal exaction" in this section includes a reference to "excessive" imposition, levying, assessment, or collection. The term "excessive," as used in this reference, is not defined. The term is vague and cannot be summarized for the electorate without clarification.
• This section provides that taxpayers who are aggrieved by an illegal exaction are entitled to collect from the taxing entity "whether or not appropriation is made sufficient to pay the judgment." It is unclear how it is intended that this requirement is to operate in situations where payment under such circumstances would have the effect of impairing contracts or bonded indebtedness. Moreover, this provision raises the question of what is to happen in the event that the entity simply does not have the money to pay — whether that entity must raise taxes to make such payment, what would be the impact if the voters refused to approve such a tax, and whether litigation would be necessary for the aggrieved taxpayer to recover.
• This section provides that a failure to exhaust administrative remedies will not bar recovery for illegal exactions. It is unclear whether this provision is intended to have the effect of repealing all current requirements concerning administrative procedures in tax cases.
Section 5.
• This section provides "protections" for taxpayers in litigation brought to judgment after the effective date of passage of the proposed measure. This provision appears to create a potential conflict with Section 1 of the proposed measure, which states: "Nothing herein shall be construed to prohibit the collection of taxes for which liability accrued prior to the effective date of this amendment."
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh