Dick BARCLAY, Director, Arkansas Department of Finance and Administration *et al.* v. Dan MELTON *et al.*

99-376                                                    5 S.W.3d 457

Supreme Court of Arkansas
Opinion delivered December 2, 1999

*Malcolm P. Bobo*; and *Mark Pryor*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., for appellee.

*Oscar Stilley*, for appellee.

R AY THORNTON, Justice. The Department of Finance and Administration, through its director, Dick Barclay, brings this appeal from the order of the Pulaski County Chancery Court that Act 916 of 1995, which revamped the state's school funding formula by imposing an income-tax surcharge of ten percent on the tax liability of every individual resident of each local school district not levying a base millage of at least twenty-five mills, violates the Arkansas Constitution. Because we have determined that the act in question is violative of Article 5, section 21, of the Arkansas Constitution, we affirm the decision below.

In November 1994, the Pulaski County Chancery Court declared the state's school funding system was unconstitutional under Article 2, sections 2-3 and 18, and Article 14, section 1, of the Arkansas Constitution. The court stayed the effect of its decision for two years "to give the State of Arkansas time to enact and implement appropriate legislation in conformity with [its] opinion." In its 1995 session, the Legislature passed and the Governor signed several acts, including Acts 916 and 917, which revamped the school funding formula in an effort to comply with the November 1994 order. Act 916 imposed an income-tax surcharge of ten percent on the tax liability of every individual resident of each local school district not levying the base millage, twenty-five mills, in 1996 and each year thereafter. Act 917 is not at issue in this appeal. Act 916 was repealed by Act 1040 of 1997, which limited the taxpayer surcharge to tax year 1996 only.

Appellees Dan Melton and Steve Cline filed a complaint alleging that Act 916 of 1995 violated the Arkansas Constitution in two ways: first, that it violated Article 14, section 3, by establishing a minimum tax millage rate for public schools. Our state constitution provides that the setting of property tax millage rates and school operational and maintenance expenses are to be the purviews of the local boards of education, to be voted on and approved by the electors of the district. Second, appellees contended that House Bill 1749, which came to be Act 916 of 1995, violated Article 5, section 21, because it originally provided for an income-tax credit, but was later amended so that it ultimately levied an income-tax surcharge, so changing the purpose of the bill that it violated our constitutional prohibition that no bill shall be so altered in its passage through either house as to change its original purpose.

On September 28, 1998, Chancellor Collins Kilgore issued an order finding that Act 916 of 1995 is unconstitutional to the extent that it purports to levy a ten percent income-tax surcharge on certain taxpayers. The chancellor found that Act 916 of 1995 violates Arkansas Constitution, Article 5, section 21, by stripping a bill providing for a tax credit of all substantive provisions and replacing said provisions with a tax increase. The chancellor also found that Act 916 violated Arkansas Constitution, Article 14, section 3, which prohibits the legislature from setting a minimum millage rate for public school purposes, either directly or indirectly, but further found that appellees did not meet their burden of proof as to their allegations that Act 916 coerced the voters of school districts with less than twenty-five mills maintenance and operations for public schools such as to violate the right to a free election. This finding has not been challenged by appellees.

The trial court determined the amount at issue to be refunded from the collection of the ten percent surcharge imposed for 1996 taxes was $1,493,538. The imposition of this surcharge affected only residents of the following school districts: the Berryville and Green Forest Districts in Carroll County, the Westside Consolidated School District in Craighead County, the Hope School District in Hempstead County, the Huntsville School District in Madison County, the Waldron School District in Scott County, the Marshall School District in Searcy County, and the Newark School District in Independence County. The chancellor's order further found that the ten percent income-tax surcharge was assessed and

collected from the residents living in the affected school districts enumerated, save for those residing in the Newark School District.

Chancery court cases are tried *de novo* on the record on appeal. However, we will not reverse the findings of the chancellor unless clearly against the preponderance of the evidence. *RAD-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986)(*citing* Ark. R. Civ. P. 52). After giving due deference to the superior position of the chancellor to determine the credibility of the witnesses and the weight to be given their testimony, we will only reverse the chancellor if we determine that his findings are clearly erroneous, i.e., when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id. See also Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999). Because we determine that the chancellor did not commit reversible error in holding that Act 916 was unconstitutional because it violated the provisions of Article 5, section 21, which reads: "No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose," we affirm the decision below on this ground. Having determined that Act 916 was unconstitutionally adopted, we need not consider whether it should be declared unconstitutional on other grounds.

House Bill 1739 was introduced during the 1995 regular session by Representative Tom Courtway. In its original form, it was entitled "An Act to Amend Arkansas Code 26-51-501 to Provide an Additional Dependent Tax Credit for Tax Year 1996; and For other Purposes." The language of that Bill dealt only with modifications to the provision for tax credits for dependents under the currently existing statute. Two later versions of the bill, introduced on February 21, 1995, and March 1, 1995, continued the purpose of providing a tax credit. However, on March 27, 1995, an entirely new version of House Bill 1739 was introduced by Representatives Ed Thicksten and Robert Lee McGinnis. This version struck the original title of the Bill and all of the provisions contained in it. The amended version was retitled "An Act to Levy an Individual Income Tax Surcharge for the Equalization of Public School Funding; and for other purposes," and the amended bill contained no reference to any "tax credit" for dependents. The body of the new bill dealt entirely with a new purpose of enacting a ten percent

income-tax surcharge for use in equalizing public school funding. In revisions dated March 28 and March 29, 1995, the ten percent tax surcharge remained the centerpiece of the legislation, and the altered bill was enacted as Act 916 of 1995.

■ The chancellor found that this bill was so altered from its original version as to be unconstitutional under Article 5, section 21. While we have not often been called upon to address this provision, the court has previously considered the argument and certain guidelines have been established for our review. In *Loftin v. Watson*, 32 Ark. 414 (1877), we held that with regard to two versions of a bill, both of which were to provide for the receipt of county warrants or county scrip to pay tax debts,

> [t]he original purpose of the bill was preserved in the act, but the amendments made by the two houses limited the scope of the bill, by exceptions, and extended it so as to embrace city warrants, etc., with like exceptions . . . The bill, thus limited and extended by amendments of the two houses, in its scope and purpose, but embracing no new matter not germane to its original purpose, became a law . . .
>
> To amend a bill for an act regulating attachments, for example, so as to change it into a road, revenue, game, school, or estray law, would be palpably in violation of the Constitution.

*Id.* While we do not interpret the prohibition of Article 5, section 21, so narrowly as to unduly hamper the legislature in its lawmaking duties, it is clear that in such a case as we have here, where a bill that had as its sole purpose the creation of a tax credit for dependents, was amended by deleting the original purpose and substituting language assessing a tax surcharge against those residents of school districts with a millage rate below twenty-five mills, violates the constitutional prohibition against altering a bill so "as to change its original purpose." Ark. Const. art. 5, § 21. We conclude that such a change in purpose is "palpably in violation of the Constitution." *Loftin, supra.* Later interpretations of this constitutional provision have held that where the body of an act "embrace[s] new matter not germane to the original purpose of the act," a bill may be unconstitutional. *Hickey v. State*, 114 Ark. 526, 170 S.W. 562 (1914). In *Matthews v. Byrd*, 187 Ark. 458, 60 S.W.2d 909 (1933), we wrote that "a legislative act will not be declared unconstitutional as violative of this section of the Constitution unless it obviously

appears that the amendments adopted do change its original purpose." *Id.*

While we adhere to the principle that this constitutional provision shall be given a practical and liberal construction to carry out its evident purpose, and all doubts should be reserved in favor of an·act of the legislature, this provision in our constitution prevents amendments to a bill which would not be germane to the subject of the legislation expressed in the original title of the Act which it purports to amend.*Pope v. Oliver*, 196 Ark. 394, 117 S.W.2d 1072 (1938). We cannot say that the decision of the trial court, that Act 916 as it was ultimately enacted was so different in purpose from the original version of House Bill 1739 as introduced, was clearly erroneous, and we affirm on this point.

Because we hold that Act 916 of 1995 violates Article 5, section 21, of the Arkansas Constitution, we decline to proceed further to consider appellant's second claim of error. Where the chancellor's order finding the legislation unconstitutional amounted to a finding that those income-tax surcharges assessed against taxpayers residing in the specifically identified school districts with a minimum millage rate below twenty-five mills were an illegal exaction, a common-law class action arises as a matter of law. *Carson v. Weiss*, 333 Ark. 561, 972 S.W.2d 933 (1998). The chancellor's finding that the plaintiff class includes those Arkansas residents assessed the ten percent surcharge imposed under the act is affirmed, and we return this matter to the chancellor for notification to the class, pursuant to the guidelines of *Carson, supra,* where we endorsed of the use of the procedural elements of Ark. R. Civ. P. 23 in managing such a class. The trial court will now make a determination of the procedure for effectuating refunds, fixing attorney's fees, and such other finalization of its current order as is necessary to resolve the remaining ministerial issues of the case.

Affirmed and remanded.

IMBER, J., not participating.