Floyd VILLINES, III, Pulaski County Judge; B.A. McIntosh,
Pulaski County Assessor;
and Pulaski County Board of Equalization *v.* Nora HARRIS

99-297 11 S.W.3d 516

Supreme Court of Arkansas
Opinion delivered February 10, 2000

*Pulaski County Attorney's Office*, by: *Karla M. Burnett, Amanda Mankin*, and *Keith Chrestman*, for appellants.

*Dover & Dixon, P.A.*, by: *Thomas S. Stone* and *Michael R. Johns*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. This case presents an appeal from an interlocutory order of the Pulaski County Circuit Court granting appellee, Nora Harris, injunctive relief from appellants' assessment and collection of any real property tax as a result of or based upon the 1996 reappraisal of the real property located within Pulaski County, Arkansas. Significantly, the Court of Appeals certified the case to this court as an issue of substantial public interest, solely to determine whether the circuit

court erred by enjoining appellants' continued tax assessment and collection. Accordingly, our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(d) (1999), and Ark. R. App. P.—Civ. 2(a)(6) (1999).

Notably, the parties urge us to consider related, substantive issues, including (1) whether the circuit court erred in finding that it has subject-matter jurisdiction over this action, and (2) whether Harris stated an illegal-exaction claim. However, we decline to reach issues not properly before us on appeal. Moreover, we reiterate that our appellate jurisdiction in this matter is confined to a review of the circuit court's interlocutory order granting an injunction. *See* Ark. R. App. P.—Civ. 2(a)(6) (1999). In fact, the trial court stated that certain issues remain unresolved in this proceeding, including damages and class certification. Given that the issue before this court is whether the circuit court possessed the jurisdiction to grant an injunction, we hold that the circuit court erred and we reverse.

## Background

Pursuant to its obligation to equalize real-property values in the county, the Pulaski County Board of Equalization held a special meeting in 1994 and approved a contract with an outside appraisal firm. The contract was executed by the county judge, the appraisals were performed, and reappraised values were placed on the tax rolls in 1996. Nora Harris, a property owner and taxpayer, appealed her reassessment to the Board of Equalization.

Subsequently, on August 14, 1996, Harris filed a complaint in the Pulaski County Court alleging that Pulaski County Judge Floyd Villines, III, and other county officials violated Arkansas statutory requirements and Pulaski County property owners' federal due-process rights via the county-wide, real-property assessment. As a result, she sought a declaratory judgment and an injunction to prevent appellees from collecting any new taxes based upon the reappraised values. After hearing arguments, Special County Judge Russ Hunt concluded that the county court lacked the power to grant an injunction pursuant to Ark. Code Ann. section 14-14-1002(a), which permits the issuance of an injunction only in the absence of a chancellor from the county. However, he granted

summary judgment in favor of Harris and found that appellants violated her due-process rights under the Fourteenth Amendment because they failed to follow the proper Arkansas statute. Importantly, appellants failed to appeal the county court's March 21, 1997, order. Further, appellants continued to collect taxes based upon the reappraisal.[1]

On April 1, 1997, Harris filed a new action in the Pulaski County Chancery Court and sought an injunction prohibiting the county from issuing tax statements and collecting taxes based on the reappraisals. Pursuant to Ark. Const. art. 7, § 15, and Ark. Code Ann. section 16-113-306, chancery courts have jurisdiction to grant injunctions against illegal or unauthorized taxes or assessments. *Priest v. Polk*, 322 Ark 673, 912 S.W.2d 902 (1995); *Pockrus v. Bella Vista Village Property Owners Assn.*, 316 Ark. 468, 872 S.W.2d 416 (1994). Although the Pulaski County Chancery Court apparently had subject-matter jurisdiction over Harris's claim, the parties transferred the action to circuit court.

At the Pulaski County Circuit Court, Harris again sought injunctive relief. She alleged that appellants' continued tax collection constituted an illegal exaction and violated Pulaski County property owners' constitutional rights. She also sought money damages. In response, appellants filed a motion to dismiss and argued that the circuit court lacked subject-matter jurisdiction over Harris's claim. After reviewing the pleadings and counsels' arguments, Special Circuit Judge John S. Patterson found that the circuit court had jurisdiction over Harris's claim, which it deemed an illegal-exaction claim. Moreover, the circuit court concluded that it had the authority to issue an injunction in light of the county court's final and unappealed order and appellants' subsequent conduct. Reserving the issues of damages and class certification, the circuit court entered an interlocutory order on December 28, 1998, enjoining appellants' assessment and collection of taxes based upon the 1996 reappraisal. From that order, comes the instant interlocutory appeal.

---

[1] In the absence of a complete evidentiary record, we remain bewildered by appellees' conduct. Their initial failure to comply with the statutory procedures, coupled with their subsequent conduct, (failing to appeal, and then ignoring the final and binding county-court order), creates a disturbing picture. Nevertheless, we are wholly without jurisdiction to instruct the circuit court how it should proceed on the pending damages issue.

## I. Interlocutory appeal

■ First, we consider the scope of the instant appeal. As a general rule, an appeal from an interlocutory decision brings up for review only the decision from which the appeal was taken, here, the granting of an injunction.*See generally*, 5 C.J.S. *Appeal and Error* § 738 (1993 & Supp. 1999). Conversely, an appellate court will not review another interlocutory decision from which no appeal was taken. *Id.* For example, where an appeal was certified to consider an interlocutory appeal from the dismissal of a counterclaim and third-party complaint, the court of appeals concluded that the defendant could not bring up for review unrelated issues pertaining to the primary suit that was still pending in the trial court. *See Coleman's Service Center, Inc. v. Southern Inns Management, Inc.*, 44 Ark. App. 45, 866 S.W.2d 427 (1993); *see also* Ark. R. Civ. P. 54(b). Specifically, the appellate court noted that when a trial court permits an interlocutory appeal on one issue, when other issues remain to be decided, the issues raised in the appeal must be reasonably related to the order appealed from. Significantly, the interlocutory appeal may not be used as a "vehicle to bring up for review matters which are still pending before the trial court." *Coleman's*, 44 Ark. App. at 49, 866 S.W.2d at 429.

■■ The mere fact that a significant issue is involved, standing alone, is an insufficient basis for this court to accept jurisdiction of an interlocutory appeal. *Scheland v. Chilldres*, 313 Ark. 165, 167, 852 S.W.2d 791, 792 (1993). Here, Harris suggests that appellees' conduct rises to the level of an "illegal exaction" in a manner never before considered by the court. She frankly requests that we extend existing law and find that a flaw in the assessment procedure can rise to an illegal exaction. Arguably, this is a significant issue. Nevertheless, we may not reach the merits of her argument. When an appeal reaches a court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the trial court exceeded its discretion in granting the injunction. *Special Sch. Dist. v. Speer*, 75 F.2d 420 (8th Cir. 1935). The sole question before the appellate court is whether the trial court "departed from the rules and principles of equity in making the order," and not whether the appellate court would have made the order. *Special Sch. Dist.*, 75 F.2d at 421-22.

 Moreover, when the trial court's subject–matter jurisdiction is essential to an action, the trial court's ruling that it has proper jurisdiction does not render that order appealable, even if that ruling is erroneous. *Signa Ins. v. Brisson*, 294 Ark. 504, 744 S.W.2d 716 (1988). In such a case, this court retains the independent duty to raise the issue of our own jurisdiction because a *final* order is a jurisdictional requisite for this court to act. *Id.*; *see also Mueller v. Killam*, 295 Ark. 270, 748 S.W.2d 141 (1988). Despite the lack of final order, however, we may exercise our appellate jurisdiction over "an interlocutory order by which an injunction is granted," pursuant to Ark. R. App. P.—Civ. 2(a)(6). The rule providing for appeals from injunctions is an *exception* to the general rule that appeals may be taken only from a "final judgment or decree." *See* Ark. R. App. P.—Civ 2(a)(1).

█ Here, we have a distinct basis and specific authority to hear the appeal from an injunction, and the extent of our review is dependent on the decision appealed from. Although we may regret our lack of ability to give a trial court sufficient guidance on remand so that it might avoid error, we cannot precipitately prevent such error by preempting the trial court's action. We have long held that our role, for better or worse, is to decline to issue advisory opinions. *See Seeco, Inc. v. Hales*, 330 Ark. 402, 414, 954 S.W.2d 234, 241 (1997). We are limited to a review of the record before us.

In light of our jurisdictional grounds, we decline to reach the following issues: (1) whether the circuit court erred in finding that it has subject–matter jurisdiction over this action, (2) whether Harris stated an illegal–exaction claim, (3) whether the circuit court erred in finding that appellant's attempts to relitigate the merits of the county–court order are barred by *res judicata*, (4) any issues relating to summary judgment, (5) any issues relating to the, as yet, unawarded damages, and (6) any issues concerning the motion for class certification. However, we are aware that at the conclusion of the instant litigation, marked by the entry of a final order, these issues may be ripe for appeal. Accordingly, while these issues are beyond the scope of this interlocutory appeal, nothing in this opinion shall be construed as a bar to a subsequent appeal of any or all of these issues.

## II. Injunctive relief

Next, we consider the circuit court's finding that it had the authority to grant appellee injunctive relief. In support of affirming the decision, appellee cites the county court's inability to grant her an injunction. Specifically, appellee posits that the presence of circuit-court authority derives from the absence of county-court authority. This argument amounts to a logical fallacy in reasoning.[2] It also fails to account for the fact that the chancery court had the authority to grant her an injunction.[3] Alternatively, appellee maintains that because jurisdiction over injunctions has not been given exclusively to courts of equity, a circuit court may have the power to issue an injunction in a case properly before it when ancillary to its jurisdiction or as necessary to grant complete relief. See *Arkansas State Medical Bd. v. Leipzig*, 299 Ark.71, 770 S.W.2d 661 (1989); *Daley v. Digby*, 272 Ark. 27, 613 S.W.2d 589 (1981); and *Pinckney v. Mass Merchandisers, Inc.*, 16 Ark. App. 151, 698 S.W.2d 310 (1985).

On the other hand, appellants argue that the circuit court was wholly without authority to issue an injunction. We agree. In the early case of *Monette Road Improvement Dist. v. Dudley*, 144 Ark. 169, 222 S.W. 59 (1920), we held that the creation of our chancery courts left no vestige of equity jurisdiction in the circuit courts.[4]

---

[2] The structure of appellee's argument takes the form of a "conditional syllogism":

*A* cannot grant an injunction
*B* is not *A*;
therefore, *B* can grant an injunction.

Although some forms of conditional syllogisms may yield a valid argument (e.g., the *modus ponens*, and the *modus tollens*), the instant form reaches an invalid conclusion by denying the antecedent. Notably, the fallacy of "denying the antecedent" fails to account for other possibilities, here, that *C* can grant an injunction. For a thorough discussion of this and other logical fallacies in the context of reasoning in the law, see Andrew Jay McClurg, *Logical Fallacies and the Supreme Court: A Critical Examination of Justice Rehnquist's Decisions in Criminal Procedure Cases*, 59 U. COLO. L. REV. 741, 774-75 (1988).

[3] Unfortunately, and inexplicably, the parties agreed to transfer the action from chancery to circuit court. From the limited record before us, it appears that the action could and should have remained in chancery court where that court could have granted an injunction and awarded damages pursuant to the clean-up doctrine.

[4] Since *Monette*, only three Arkansas cases have sanctioned a circuit court granting injunctive relief. See *Arkansas state Medical Bd. v. Leipzig*, 299 Ark. 71, 770 S.W.2d 661 (1989); *Daley v. Digby*, 272 Ark. 267, 613 S.W.2d 589 (1981); and *Pinckney v. Mass Merchandisers, Inc.*, 16 Ark. App. 151, 698 S.W.2d 310 (1985). Notably, the majority opinions is *Leipzig, Daley*, and *Pinckney* fail to cite *Monette* or to explain why the longstanding constitutional rationale of *Monette* was inapplicable. Moreover, in his concurring opinion in *Cummings v. Fingers*, 296 Ark. 276, 281-82, 753 S.W.2d 865, 868 (1988), Justice Newbern observed that in *Daley*, the

Injunctions are historically equitable and fall within the exclusive jurisdiction of chancery court. *Id.* Accordingly, we reverse that portion of the circuit court's order enjoining appellants from collecting any tax based on the 1996 county-wide reappraisal.

Special Justice MARTHA MILLER HARRIMAN and Special Justice W. KELVIN WYRICK join.

Special Justice KENNETH R. REEVES and Special Justice HOWARD W. BRILL concur.

Special Justice RICHARD A. LUSBY and Special Justice JAMES E. BAINE concur in part and dissent in part.

HOWARD W. BRILL, Special Justice, concurring. I concur in the opinion that the circuit court should not have issued an injunction. However, as set out below I do so for different reasons than the majority.

Certainly this court does not issue advisory opinions. Therefore since the trial court expressly refused to rule upon issues of damages and class certification, the majority wisely refused to address those issues. However, the Circuit Court in its order of December 28, 1998, did grant summary judgment for the taxpayer, recognizing the validity of the county court judgment and granting the taxpayer relief on the merits. In addition, the parties at the trial court level and in their briefs and arguments have raised and contested the issues of illegal-exaction claims and *res judicata*. When this case is remanded to the circuit court, and perhaps transferred back to chancery, these issues will return. Guidance from this court will help the subsequent judicial process.

### I. Subject-matter jurisdiction

This case is properly in the circuit court and should remain there. With the consent of both parties, the action was transferred to Circuit Court in July 1997. While motions were pending, the taxpayer filed an amended petition on August 10, 1998. It alleged

---

authority of a circuit court to grant an injunction was not even an issue on appeal. *See Cummings,* 296 Ark. at 281-82, 753 S.W.2d at 868 (Newbern, J., concurring). Therefore, the court's acquiescence to the circuit court's action resulted not from a deliberation on the merits but from the scope of the appeal.

that taxes had been based on the appraisal and had therefore been unlawfully collected, and the taxpayer sought damages.

As the majority states, this action clearly could have remained in chancery court because that court would have had authority under the clean-up doctrine to award damages. However, circuit courts are the repository of all matters, unless the Constitution vests exclusive jurisdiction elsewhere. Ark. Const. art. 7, § 11. Likewise, Ark. Code Ann. section 16-13-201 provides that circuit courts have "orignal jurisdiction of all actions and proceedings for the enforcement of civil rights or redress of civil wrongs, except when exclusive jurisdiction is given to other courts."

The crucial issue when the original action was commenced in 1996 in the county court was the assessment itself. The issue when this action was filed in April 1997 in chancery court was whether an injunction should be granted to stop the collection of taxes. But when this action was transferred to circuit court and the amended complaint filed in August 1998, the primary issue became damages. The taxes had been collected, and any injunction would be of scant, if any, relevance. Further, equity jurisdiction is predicated on the absence of an adequate remedy at law. In this procedural context damages have become an adequate remedy, leaving the case properly in circuit court. Despite the circular fashion in which this action came to circuit court, the circuit judge did have subject-matter jurisdiction when he ruled.

## II. Injunctions in circuit court

The parties have contested the authority of a circuit court to issue injunctions. The majority opinion sets forth the five scattered precedents that deal with this issue. However, given the passage of time since the 1996 appraisal, the question of an injunction in this matter has declined in significance and the adequacy of the damages remedy has grown. Accordingly, it is unnecessary to hold, as the majority does, that circuit courts lack power to issue injunctions.

## III. Res judicata

The elements of *res judicata* are well established. The doctrine bars relitigation of a claim in a subsequent suit when "(1) the first

suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies." *Bailey v. Harris Brake Fire Protection District*, 287 Ark. 268, 697 S.W.2d 916 (1985).

While the county court is not a court of general jurisdiction, it is a court of record, Ark. Code Ann. § 14-14-1001, and had subject-matter jurisdiction. The essence of *res judicata* is that the parties had a full and fair opportunity to litigate the issue. The county had such a chance in the original action. In addition, *res judicata* requires that a dissatisfied party have the opportunity to appeal. Here the county had the right, and indeed under Ark. Code Ann. section 16-67-201 had six months to act, and failed to do so.

The parties were not identical in the two actions, for the chancery/circuit court action includes an additional defendant. However, the modern definition of privity is "a person so identified in interest with another that he represents the same legal right." *Bruns Foods of Morrilton, Inc. v. Hawkins*, 328 Ark. 416, 418, 944 S.W.2d 509, 510 (1997). The privity requirement is satisfied.

The claim in the county court action challenged the appraisal; the claim in the chancery/circuit court action went further and challenged the collection of taxes and sought damages. Those issues were premature and could not have been asserted initially. However, "issues and remedies raised in the subsequent suit do not have to be identical to those raised in the initial suit in order for the claim preclusion part of res judicata to apply." *Swofford v. Stafford*, 295 Ark. 433, 435, 748 S.W.2d 660, 662 (1988). The circuit court properly held that the issue of the application of Ark. Code Ann. section 26-26-601 and the county's failure to follow the procedures had been fairly litigated and the finding was thereby conclusive. The county had its day in court and is not entitled to relitigate its failure to adhere to the Arkansas statutes.

### IV. Illegal-exaction claims

Article 16, section 13, of the Constitution permits any citizen to sue for himself and all others interested to protect "against the enforcement of any illegal exactions whatever." When properly

asserted, illegal-exaction claims may be brought in either circuit or chancery court, depending in large part on the remedy sought. *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998). The provision encompasses two types of claims: those involving public funds and those involving illegal taxes. *Western Foods, Inc. v. Weiss*, 338 Ark. 140, 992 S.W.2d 100 (1999); *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992).

Cases involving taxes are divided between those alleging that the tax itself is illegal or void, and those alleging that the assessment or collection of the tax is flawed or erroneous. Allegations that a tax is contrary to a constitutional or statutory provision fall within the scope of illegal exactions, and thus come within the subject-matter jurisdiction of the circuit and chancery courts. *Barclay v. Melton*, 339 Ark. 362, 5 S.W.3d 457 (1999); *Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995). Likewise, allegations that a government has failed to roll back taxes as required by Amendment 59 support an illegal- exaction claim. *See Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998); *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997). But the authorities are equally clear that a flaw in the assessment procedure, no matter how serious or grievous to the taxpayer, does not make the exaction itself illegal or void. *Pockrus v. Bella Vista Village Property Owners Assn.*, 316 Ark. 468, 872 S.W.2d 416 (1994); *Scott County v. Frost*, 305 Ark. 358, 807 S.W.2d 469 (1991); *McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990).

The unique posture of this case falls between the two classic situations. The original action alleged a flaw in the assessment and was properly brought in county court; it was not an illegal-exaction claim. Further, neither the county suit nor this suit specifically alleged that the tax itself was illegal or contrary to law. Accordingly, the county contends that a mistake or flaw in the assessment procedure can never rise to the level of an illegal exaction. The taxpayer on the other hand, while admitting that the special circumstances of this case present a form of illegal exaction never before addressed by this Court, contends that the mistake or error in the assessment grew into an illegal exaction because of two subsequent events: first, the determination by the county judge, and second, the county's failure to abide by the judicial determination.

The taxpayer has made an express and frank request to extend existing law. Without deciding whether a flaw in the assessment procedure can ever rise to an illegal exaction, in the unusual setting of this case it did not. At a special session in 1994, the Board of Equalization decided, pursuant to its authority in Ark. Code Ann. section 26-27-311, to employ professional appraisers to conduct the appraisal, rather than have its in-house staff carry out its duties. However, the Board ignored, or overlooked, the provisions of Ark. Code Ann. section 26-26-601 *et seq.* These provisions require (1) a petition signed by the county assessor, a majority of the equalization board, and a majority of the local government governing bodies and school boards; (2) publication of the petition; (3) a public hearing, with the opportunity for property owners to be heard in support or in opposition to the petition; (4) approval by the county court; (5) negotiations by three property owners appointed by the court for the employment of professional appraisers; and (6) approval of the contract by the county judge, a majority of the members of the municipal governing bodies, and a majority of the affected school boards.

Certainly this court should not undermine the significance of this statute or the legislative intent in enacting these safeguards. However, these facts do not rise to this court's prior definition of an illegal or void tax. Taxes collected pursuant to an appraisal conducted by an appraiser hired in violation of this statute do not become illegal or void.

## V. Damages

The taxpayer has been wronged. She has been denied the rights given her by the Arkansas statutes. With notice and the chance to participate in a hearing, she might have persuaded the court that no county-wide reappraisal was required or that a different professional appraiser be hired.

The Constitution guarantees her redress. "Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character." Ark. Const. art. 2, § 13. The circuit court has jurisdiction of proceedings "for the enforcement of civil rights or redress of civil wrongs." Ark. Code Ann. § 16-13-201. Governments should not be permitted with

impunity to ignore the orders of courts. Upon remand, the taxpayer should have the opportunity to prove her damages.

K ENNETH R. REEVES, Special Justice, concurring. I concur with the majority view that the Circuit Court erred in granting the injunction, but do so on the basis that there is an adequate remedy at law. The Appellee sued in Circuit Court for damages and, if she can prove her case, she can obtain relief with a money judgment. As to the injunction to prohibit the collection of taxes based on the flawed assessment, the horse is already out of the barn. The entry of an injunction at this point affords no relief to the taxpayer.

The issue of whether or not a Circuit Court has the authority to issue an injunction, though addressed by this Court on several occasions, remains unclear. As the majority opinion points out, there is certainly more recent authority that Circuit Courts can issue injunctions, however, the *Monette* decision still hangs out there — inexplicably unaddressed.

Considering the fact that there is an adequate remedy at law, this Court does not have to reach the significant question of whether or not a Circuit Court can *ever* issue an injunction, and should not.

R ICHARD LUSBY, Special Justice, concurring in part; dis- senting in part. I concur with the majority view that the circuit court lacked authority to issue injunctive relief in this case. It may well be that the court could have concluded that appellee now has an adequate remedy at law in her claim for monetary damages, denying appellee injunctive relief on that basis. Nevertheless, I do agree there is an absence of persuasive precedent granting circuit courts the power to issue injunctions. I disagree with the majority with respect to its refusal to address subject-matter jurisdiction and the related illegal-exaction issue.

*I. Interlocutory Appeal*

The majority noted that this is an interlocutory appeal permit- ted by Ark. R. App. P.—Civ. 2(a)(6) (1999) pertaining to injunc- tions. Citing *Coleman's Service Ctr., Inc. v. Southern Inns Management, Inc.*, 44 Ark. App. 45, 866 S.W.2d 427 (1993), the court concluded

it could not take up any issue other than the circuit court's authority to grant injunctive relief. However, the court of appeals refused to take up other issues in *Coleman's Service Ctr., Inc.* because those issues were "totally unrelated" to the question that was the basis of the interlocutory appeal. *Id.* at 429. That is not true in the matter now before this court.

In the proceedings below, appellant contended that the circuit court lacked subject-matter jurisdiction. Before granting appellee the injunctive relief requested, the circuit court specifically determined that it did have such jurisdiction. On appeal, appellant not only argues that circuit courts lack power to grant injunctive relief, it again contends that this circuit court lacks subject-matter jurisdiction in the circumstances of this case.

The circuit court's granting of relief in inextricably bound up in its decision that it had subject-matter jurisdiction. Both below and on appeal, the question of subject-matter jurisdiction is at the heart of the parties' battle over the appropriateness of the circuit court's grant of injunctive relief. Under the circumstances, it simply cannot be fairly said that the issue of subject-matter jurisdiction is "totally unrelated" to the injunction which provides the basis for this interlocutory appeal.

The majority concluded that the court cannot take up the issue of subject-matter jurisdiction. The court can take up this issue and if it can, it should. A refusal to do so makes a second appeal almost inevitable. Depending upon the outcome of a second appeal that does resolve the subject-matter jurisdiction issue, the parties' effort, time, and expense in prosecuting a damage action may well be for naught. I agree this court should not violate its rules and principles simply for the sake of economy. However, where the court, by acting now within its guidelines, can foreclose the necessity of an additional appeal or other legal action, I believe it should.

## II. Subject-Matter Jurisdiction and Illegal Exaction

Appellee contends, and appellant vigorously denies, that the case now before the court involved an illegal exaction. If this is an illegal-exaction case, it is beyond question that the circuit court does have subject-matter jurisdiction. Ark. Const art. 16, § 13; *Barclay v. Melton*, 339 Ark. 362, 5 S.W.3d 457 (1999); *Barnhardt v.*

*City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995). However, appellee concedes that the actions of the county in collecting the tax in this case do not fit within the accepted definition of an illegal exaction. Consequently, appellee frankly asks the court to expand the definition of illegal exaction to apply to the circumstances of this case thereby establishing subject-matter jurisdiction in the circuit court.

As set forth in the background provided in the majority opinion, this case involves the collection of taxes based upon a flawed reappraisal. I agree this court has thus far excluded from the definition of illegal exaction, taxes based upon faulty appraisals and assessments. *Pockrus v. Bella Vista Village Property Owners Assn.*, 316 Ark. 468, 872 S.W.2d 416 (1994); *Scott County v. Frost*, 305 Ark. 358, 807 S.W.2d 469 (1991); *McIntosh v. Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990). I would *not* broaden the definition of illegal exaction to include such matters. However, the facts in this case go beyond the simple situation of a tax based upon a flawed assessment. Here, the county was faced with the need for property reappraisal. The county chose between two statutory methods for conducting the reappraisal process. The statutory provisions appropriate for these particular circumstances involved public notice and the opportunity for property owners to participate in the process. Ark. Code Ann. § 26-26-601, *et seq.* The county chose a method that did not involve the public's participation. Ark. Code Ann. § 26-27-311.

As egregious as this decision may have been, it cannot be the basis for an illegal-exaction case, pursuant to the precedents cited above. However, there is more involved here than a taxing authority's determination to exclude taxpayers from the process. The appellant, having been denied relief by the Board of Equalization, filed suit in county court, seeking to prevent the county from collecting taxes based upon the flawed reappraisal process. The county court agreed that the reappraisal was flawed and gave declaratory relief but denied an injunction, based upon its determination that it lacked authority to provide such relief. Appellant immediately filed suit in chancery court, seeking the additional relief which the county court could not give. Despite notice by a court of competent jurisdiction that its reappraisal process violated the statute, and despite notice of ongoing litigation to enforce the county court's order, the county went forward to collect taxes based upon a

reappraisal that was contrary to statutory law. Stated another way, the county knowingly collected taxes based upon an appraisal that had been declared to be illegal. It is this action of the county that I believe renders the tax collected an illegal exaction.

While the facts described herein do not precisely fit under accepted notions of illegal exaction, I believe the definition should be broadened just enough to include such circumstances. The county's wrongful exclusion of property owners from the process was bad enough. The county's inexplicable action, ignoring the court's order, cannot be allowed to stand. As a practical matter, reversing the trial court's decision without addressing subject-matter jurisdiction may well do just that.

I share a reluctance to take any action likely to generate unwarranted litigation or undermine the ability of county government to collect legal taxes. However, I do not believe this narrow expansion of existing law would unduly open the door to a flood of illegal-exaction cases. Hopefully, the action of Pulaski County ignoring a court order will not be repeated in this county or any other.

Undoubtedly, there would have been much consternation in Pulaski County government had the majority determined the county's collection of the tax to be an illegal exaction. I am confident that this consideration played no part in the majority's refusal to take up this issue. Certainly, such matters should not be of concern to the court. Whatever consequences might flow from a determination that an illegal exaction occurred would be the result of Pulaski County's blatant disregard of an explicit decision by the county court and applicable statutory law. I would remand this case back to the circuit court for proceedings on damages with a clear statement that the circuit court has subject-matter jurisdiction by virtue of the fact that an illegal exaction has occurred.

Special Justice JAMES E. BAINE joins.