42 S.W.3d 427 (2001)
344 Ark. 505
ARKANSAS STATE GAME AND FISH COMMISSION; Jim Hinkle, Dr. Lester Sitzes, Forrest Wood, Mike Freeze, and Sheffield Nelson, Individually and As Members of the Arkansas Game and Fish Commission, and Hugh C. Durham, Director, Arkansas Game and Fish Commission, In Their Representative Capacities
v.
Marsha SLEDGE, Kirk McCullough, Belinda Morgan, Joey Wilders, Buddy B. Spivey, Dennis Campbell, Monroe Williams, Bobby Jo Willie, James "Jim" Dodd, and Arkansas Guides Association.
No. 00-1425.
Supreme Court of Arkansas.
April 26, 2001.
*428 James F. Goodhart and James B. Watson; and Hill, Gilstrap, Perkins & Trotter, PC by G. Alan Perkins, Little Rock, for appellants.
Hurst Law Offices by Q. Byrum Hurst, Jr. and Tylar C.M. Tapp, III, Hot Springs, for appellees.
TOM GLAZE, Justice.
This is an appeal from an order of the Pulaski County Circuit Court that purported to stay the enforcement of Arkansas Game and Fish Commission ("Commission") Code 25.09.[1] This rule, which the Commission adopted on October 19, 2000, prohibits commercial duck hunting guides from operating on three of the Commission's wildlife management areas in Arkansas on Saturdays and Sundays during the duck hunting season. The regulation also prohibits waterfowl hunters from hunting while being guided by a commercial duck guide on those same areas on weekends.
On November 7, 2000, a group of duck hunters and duck hunting guides filed suit against the Commission in Arkansas County Circuit Court, seeking a declaratory judgment determining that the regulation was outside the scope and authority of Amendment 35. In addition, the plaintiffs requested a preliminary and permanent injunction requiring the Commission to allow hunting guides in the wildlife management areas until the matter could be fully heard by the court. On the same day, the plaintiffs also filed a petition for stay of enforcement of the regulation, stating that the duck hunting season began on November 18, 2000, and that they would be irreparably harmed in the absence of injunctive relief. On November 16, 2000, the Commission moved to dismiss the plaintiffs' complaint and motion for stay of enforcement, alleging that the circuit court did not have subject-matter jurisdiction to issue injunctive relief and asserting that venue was in Pulaski County, not Arkansas County.
*429 On November 27, 2000, the Arkansas County Circuit Court agreed with the Commission on the venue issue and transferred the case to the Pulaski County Circuit Court. Once in Pulaski County, the plaintiffs filed an amended complaint on December 6, 2000, in which they requested a "stay of enforcement" under Ark.Code Ann. § 16-113-305 (1987). The complaint again alleged the plaintiffs would suffer irreparable harm if the rule were to be enforced, and the plaintiffs asked the court to issue a stay requiring the Commission to allow them to utilize duck hunting guides.
After oral arguments on the issue, the Pulaski County Circuit Court entered an order on December 8, 2000, granting the plaintiffs' petition for stay and preventing the Commission from enforcing the regulation at issue, pending the trial of the matter. The Commission brings this appeal from that December 8 order, and contends first that the so-called stay order was in effect an injunction from which it could appeal under Ark. R.App. P.Civ. 2(a)(1); secondly, the Commission asserts that the circuit court did not have the authority or jurisdiction to issue injunctive relief and, for that reason, the December 8 order should be dismissed. The plaintiffs respond, arguing that the order was not an injunction, but instead was merely a stay order which was within the circuit court's power to issue and is not final or appealable.
At the outset, we note that the duck hunting season ended in January. As it is now April, this case would appear to be moot. However, this court has recognized an exception to the mootness doctrine "for cases that are capable of repetition yet evading review, being cases in which the justiciable controversy will necessarily expire or terminate prior to adjudication" Cook v. State, 333 Ark. 22, 968 S.W.2d 589 (1998) (citing Wright v. Keffer, 319 Ark. 201, 890 S.W.2d 271 (1995)). Because it is likely that this situation will arise again this fall when duck season opens, we address the issues presented to us by this case.
Under Rule 2(a), an appeal may be taken from a circuit, chancery, or probate court to this court from a final judgment or decree entered by the trial court. Rule 2(a)(6) also permits an appeal from an interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused. Therefore, the first question we must address is the nature of the order issued by the Pulaski County Circuit Court.
A stay is generally defined as "a suspension of the case or some designated proceedings within it. It is a kind of injunction with which a court freezes its proceedings at a particular point. It can be used to stop the prosecution of the action altogether, or to hold up only some phase of it, such as an execution about to be levied on a judgment." Black's Law Dictionary 1413 (6th ed. 1990). An injunction, on the other hand, is a "court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury." Black's at 784.
Arkansas cases have defined an injunction as "a command by a court to a person to do or refrain from doing a particular act." Arkansas Dep't of Human Servs. v. Hudson, 338 Ark. 442, 994 S.W.2d 488 (1999); Tate v. Sharpe, 300 Ark. 126, 777 S.W.2d 215 (1989). It is mandatory when it commands a person to do a specific act, and prohibitory when it commands him or her to refrain from doing a specific act. Butler v. State, 311 Ark. 334, 842 S.W.2d 435 (1992). All court *430 orders are mandatory in the sense that they are to be obeyed, but not all orders are mandatory injunctions. Tate, 300 Ark. at 129, 777 S.W.2d 215. To be a mandatory injunction, the order must be based upon equitable grounds to justify the use of the extraordinary powers of equity, such as irreparable harm and no adequate remedy at law. Id. In addition, the order must determine issues in the complaint, not merely aid in the determination of such issues. Id.; see also Warren v. Kelso, 339 Ark. 70, 3 S.W.3d 302 (1999) (stay of proceedings does not translate into an injunction).
In Hudson, this court dismissed an appeal from an order that the Arkansas Department of Human Services ("DHS") claimed was an injunction. In rejecting DHS's contention, the court noted that it had "previously declined to hold that a preliminary order which [did] not finally resolve or determine any part of the action is equivalent to an injunction for purposes of appeal." DHS, in Hudson, had attempted to appeal from a circuit court's order staying the department's decision to revoke the appellee Hudson's child-care license.[2] This court wrote that the stay order did not determine any of the issues presented in Hudson's appeal to the circuit court, "a clear prerequisite for establishing the presence of an injunction under our case law." Hudson, 338 Ark. at 444, 994 S.W.2d 488.
In the present case, although the plaintiffs contended they were entitled to a "stay" under Ark.Code Ann. §§ 25-15-207 (Repl.1996) and 25-15-212(Supp.1999), they pled in their complaint that they were entitled to a stay pursuant to Ark.Code Ann. § 16-113-305. That statute reads as follows:
In all cases where applications are made in any court in this state having jurisdiction thereof to enforce any statute or order of an administrative board or commission of this state, a stay against the enforcement of the statute or order may be issued by the court pending the determination of the suit by the state court.
(Emphasis added.)
The plaintiffs' reliance on § 16-113-305 is misplaced, however, because they did not make an application to enforce any statute or order; rather, the plaintiffs sought to keep the Commission from enforcing its Code 25.09. In addition, no "order of an administrative board of commission" was issued in this case. Under Ark.Code Ann. § 25-15-202(6) (Supp. 1999), an "order" is "the final disposition of an agency in any matter other than rule making, including licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Here, the document issued by the Commission with which the plaintiffs took issue was a rule, not an order. A "rule" is "any agency statement of general applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice of any agency." Ark. Code Ann. § 25-15-202(4) (Supp. 1999). Thus, because only the enforcement of an "order" may be stayed under § 16-113-305, and because no "order" was issued here, that statute and its provision regarding a stay are not applicable.
In addition, even if the plaintiffs had sought a stay under § 25-15-212, their argument would still be unavailing. That section, as noted above, provides for judicial *431 review of an administrative adjudication, but here, no such adjudication of the rights or privileges of any duck hunting guide has taken place. In other words, the Commission never sought to enforce Code 25.09 against any of the plaintiffs; thus, there has been no "final agency action" to be reviewed as provided for under § 25-15-212(a).
In sum, the plaintiffs were not entitled to a stay under any of the statutes they cite, and the order that was issued by the circuit court constituted an injunction. That order specifically directed the Commission to refrain from enforcing its rule. It was not merely a direction to do something "in the progress of a case," Hudson, 338 Ark. at 444, 994 S.W.2d 488; rather, the order granted the relief sought by the plaintiffs. The circuit court's order was not like the "stay" order entered in Hudson, because that stay was properly issued under § 25-15-212 to hold off enforcement of DHS's administrative adjudication pending judicial review.
Here, on the other hand, the plaintiffs specifically asked the trial court to keep the Commission from enforcing its newly adopted regulation; the court entered an order commanding the Commission to refrain from doing so. The Commission's ability to apply its regulation was the issue in this case, and the circuit court's order effectively decided that the Commission must refrain from applying it. We conclude the order was an injunction, and therefore appealable under Ark. R.App. P.Civ. 2(a)(6).
Because we hold the December 8 order is one granting injunctive relief and may be properly appealed from by the Commission under Rule 2(a)(6), the next question becomes whether the circuit court had the ability to enter such an order. Generally speaking, a circuit court is "wholly without jurisdiction to issue an injunction." Villines v. Harris, 340 Ark. 319, 11 S.W.3d 516 (2000). As long ago as 1920, this court wrote as follows:
Injunctive relief is purely a matter of equitable jurisdiction, which, under the Constitution of this State, falls within the jurisdiction of separate chancery courts as now established.... We are of the opinion that the power of the Legislature in establishing separate chancery courts therefore swept away the jurisdiction of the circuit court in matters exclusively cognizable in courts of equity.
Monette Road Improvement Dist. v. Dudley, 144 Ark. 169, 222 S.W. 59 (1920); see also Manitowoc Remanufacturing, Inc. v. Vocque, 307 Ark. 271, 819 S.W.2d 275 (1991) (an injunction is an equitable remedy of which a chancery court has jurisdiction); Timmons v. McCauley, 71 Ark.App. 97, 27 S.W.3d 437 (2000) (citing Villines for its "unequivocal" statement that the circuit courts of this state do not possess the power to grant injunctive relief).
We note that there are three cases that appear to suggest that a circuit court may grant injunctive relief. See Arkansas State Medical Bd. v. Leipzig, 299 Ark. 71, 770 S.W.2d 661 (1989); Daley v. Digby, 272 Ark. 267, 613 S.W.2d 589 (1981); and Pinckney v. Mass Merchandisers, Inc., 16 Ark.App. 151, 698 S.W.2d 310 (1985). However, none of these cases cited Monette, and each has subsequently been disapproved. In Cummings v. Fingers, 296 Ark. 276, 753 S.W.2d 865 (1988), Justice Newbern wrote a concurrence in which he opined that Daley "erroneously rel[ied] on a case which noted the granting of an injunction by a circuit court but in which its power to do so was not the issue on appeal." With respect to Pinckney, he noted that the court of appeals held that a circuit court had jurisdiction to issue an injunction under Ark.Code Ann. § 16-13-304, *432 which dealt with chancery courts' jurisdiction over matters of equity. Neither of those two cases, Justice Newbern commented, "cited Monette ... [,] nor did either offer a constitutional rationale to replace the one stated there. If [Daley and Pinckney] are cited to us in the future as being inconsistent with this case, we should overrule them." Cummings, 296 Ark. at 281-82, 753 S.W.2d 865 (Newbern, J., concurring). We take the opportunity to explicitly overrule Leipzig, Daley, and Pinckney with this opinion.[3]
In conclusion, we hold the Pulaski County Circuit Court was wholly without jurisdiction to enjoin the Commission from enforcing its regulation 25.09, and therefore reverse and dismiss the trial court's December 8 order preventing the Commission from enforcing its regulation.
NOTES
[1] Code 25.09 reads as follows: "GUIDING RESTRICTIONS ON CERTAIN WILDLIFE MANAGEMENT AREAS. It shall be unlawful for those holders of the Special Guide License to guide waterfowl hunters on Bayou Meto, Dave Donaldson/Black River and Shirey Bay/Rainey Brake Wildlife Management Areas on Saturdays or Sundays. It shall also be unlawful for waterfowl hunters to hunt while being guided by a Special Guide License holder on these areas at these times."
[2] DHS revoked Hudson's license, and she appealed that decision to the circuit court, which stayed the DHS decision pursuant to Ark.Code Ann. § 25-15-212(c) of the Administrative Procedures Act.
[3] We also note that Arkansas voters approved Ark. Const. amend. 80 at the November 2000 general election. This amendment, which shall become effective on July 1, 2001, provides that the circuit courts will be "the trial courts of original jurisdiction of all justiciable matters not otherwise assigned" by the Constitution. See Ark. Const. amend. 80, Section 6(A). Under Section 6(B) of the amendment, "[s]ubject to the superintending control of the Supreme Court, the judges of a circuit court may divide that circuit court into subject matter divisions, and any circuit judge within the circuit may sit in any division." This court issued Administrative Order No. 14 on April 6, 2001; in that order, we directed that the circuit judges of the judicial circuits "shall establish the following subject-matter divisions in each county of the judicial circuit: criminal, civil, juvenile, probate, and domestic relations. The designation of divisions is for the purpose of judicial administration and caseload management and is not for the purpose of subject-matter jurisdiction." Admin. Order No. 14, § 1(a), ___ Ark. ___, ___ S.W.3d ___ (April 6, 2001) (per curiam). The circuit judges are to submit their administrative plans to this court by June 1, 2001, and this court is to approve or disapprove those plans by July 1, 2001, in order that the plans may be implemented by January 1, 2002. See Admin. Order No. 14, § 4(a).